UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Letitia Nadine Dyer,  Civ. No. 20-2342 (PAM/ECW)

    Plaintiff,

v.  **MEMORANDUM AND ORDER**

Kathryn Olson (Katie),
Kwabena Asamoah, Arlene
Thompson, Matthew Mason,
and R.R. Donnelley (RRD),

    Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss or for a More Definite Statement. For the following reasons, the Motion to Dismiss is granted in part and the Motion for More Definite Statement is granted as to any claims not dismissed with prejudice.

**BACKGROUND**

Plaintiff Letitia Dyer was employed at Defendant R.R. Donnelley & Sons in Chanhassen, Minnesota ("RRD"). Her 81-page Amended Complaint (Docket Nos. 19, 19-1) purports to raise claims against RRD and four individuals—who are identified only by name—under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e et seq., alleging discrimination on the basis of race, color, gender, national origin, disability, and age; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq.; and for state torts such as theft, both negligent and intentional infliction of emotional distress, wrongful termination, pay

discrimination, and an alleged conspiracy to deny her civil rights under 18 U.S.C. § 241. (Docket No. 19 ¶¶ 3, 9.)

In addition to this lawsuit, Dyer filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She did not provide a copy of either charge in an exhibit to either the initial Complaint (Docket No. 1) or the Amended Complaint. Defendants provided the charges as exhibits to the McNee Declaration. (Docket No. 24-1 Exs. 1, 2.) "[A]n EEOC charge is a part of the public record and may be considered on a motion to dismiss." Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 931 (8th Cir. 2011). The EEOC dismissed both of Dyer's charges and issued notices of right to sue. (McNee Decl. Exs. 3, 4.)

Dyer's first EEOC charge, filed March 10, 2020, alleged discrimination on the basis of race, age, and disability, and retaliation on the basis of these three protected characteristics. (Id. Ex. 1.) The charge claimed that the discrimination began on May 16, 2019, and ended on July 10, 2019. (Id.) She claimed to have been "treated differently and disciplined," "harassed and subjected to a hostile work environment," and that the "harassment affected [her] disability which the respondent was aware of and [she] was forced to go out on a disability leave." (Id.) There were no facts listed in support of these claims.

Dyer filed her second charge with the EEOC on November 17, 2020, the day after she filed the instant lawsuit, again claiming race, age, and disability discrimination and retaliation, and adding discrimination and retaliation on the basis of color, national origin, and sex. (Id. Ex. 2.) This charge claimed that Dyer took medical leave and that RRD failed

to extend that leave and terminated her employment. (Id.) The charge's claimed discrimination took place between July 11, 2019, and November 12, 2020. (Id.) Neither charge offered any factual details about the alleged discriminatory or retaliatory actions, nor did she check the "continuing violations" box on either charge.[1]

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). When determining whether a more definite statement is required, "the only question is whether it is possible to frame a response to the pleading."

---

[1] Dyer did not initially respond to Defendants' Motion and Defendants requested that the Motion be deemed unopposed. Dyer then filed an opposition memorandum on May 7, 2021 (Docket No. 31), well beyond the Court's deadline for doing so. The Court recognizes its power to exclude this untimely opposition; given Dyer's pro se status, however, the Court has considered the arguments Dyer raises in this memorandum. Indeed, the opposition provides more insight into Dyer's claims than does her Amended Complaint.

3

Ransom v. VFS, Inc., 918 F. Supp. 2d 888, 901 (D. Minn. 2013) (Tunheim, J.) (quotation omitted).

**A.      Timeliness**

Federal employment discrimination laws require that a person claiming such discrimination file a charge regarding the alleged discrimination before bringing a lawsuit. Only discrimination occurring within 300 days of the charge is actionable. See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d). And claims under Title VII, the ADA, and the ADEA must be commenced within 90 days of receipt of the EEOC's notice of right to sue. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e).

Many of Dyer's allegations occurred long before the time period alleged in her EEOC charges, and far beyond the 300-day period for raising such claims, which is May 15, 2019. For example, Dyer contends that in October 2018, she left a "Cardboard Castle" in her cubicle area overnight, and the castle disappeared. (Docket No. 19-1 ¶¶ 11-16.) Another allegation is that her manager attempted "job sabotage" against Dyer in December 2018. (Id. ¶¶ 24-26.) The first alleged discriminatory or retaliatory practice occurring after May 15, 2019, is a claim repeated throughout her Amended Complaint regarding what Dyer alleges to be "racial segregation" in her workspace. According to Dyer, on May 16, 2019, her manager moved another co-worker's desk so that Dyer was the only person in a four-desk pod and could not interact with other employees unless they sought her out. Dyer contends that this constituted racial and disability discrimination, harassment, retaliation, unequal pay based on race and gender, disparate treatment, disparate impact, conspiracy to discriminate, conspiracy to harass, "Conspiracy Against Rights," intentional and negligent

infliction of emotional distress, failure to intervene, and failure to make reasonable accommodation under the ADA. (Id. ¶¶ 206-21.) Many of what appear to be separate (albeit unnumbered) counts in the Amended Complaint relate to this alleged isolation and segregation. (E.g., id. ¶¶ 264-73 ("May 21, 2019—4th Day of Racial Segregation, Physical Isolation, Disability Segregation"); id. ¶¶ 507-26 ("June 7, 2019—17th Day of Racial Segregation, Physical Isolation, Disability Segregation").)

Dyer's opposition memorandum contends that all of the allegations in the Amended Complaint are either part of a continuing violation, part of a pattern of harassment that is actionable as long as one act occurs during the relevant time period, or were intentionally concealed so that she did not realize their import until she learned more about the conspiracy to discriminate against her.

Because Dyer did not allege a continuing violation in her EEOC charge, it is doubtful that any such violation is like or reasonably related to the allegations in her EEOC charges, and thus the continuing violations theory cannot save the timeliness of her claims. But even if she properly exhausted her continuing-violations theory, that theory applies only to claims of a hostile work environment, not to discrete claims of discrimination or retaliation. See Davis v. Lohr Distrib. Co, Inc., No. 4:18cv1437, 2019 WL 2053848, at *6 (E.D. Mo. May 9, 2019) (noting that Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002), "acknowledged an exception to its bar on the consideration of discriminatory actions that occur outside the statutory period, but solely for hostile work environment claims").

And while she is correct that a claim of workplace harassment may include acts

5

from outside the statutory time period, see Morgan, 536 U.S. at 122, she has not sufficiently alleged any pattern from which the Court could conclude that the alleged acts "are part of the same unlawful employment practice." Id. Her claims regarding the conspiracy she believes was afoot are not plausible and cannot save her untimely claims. The claims Dyer purports to raise relating to matters that occurred before May 15, 2019, must be dismissed with prejudice.

Defendants also ask the Court to dismiss any claims based on the first charge because Dyer also did not file this lawsuit within 90 days of her receipt of the notice of right to sue on that charge. She received the notice on August 15, 2020, but filed the lawsuit on November 16, 2020, three days after the 90-day period expired. Given the pandemic and the attendant difficulties with the U.S. mail and the Court's operations, the Court is reluctant to dismiss on this basis. Moreover, any timely claim included in the first charge fails on the merits, as discussed below.

**B.      Exhaustion**

An individual may sue only over alleged discriminatory or retaliatory practices that "grow[] out of or [are] like or reasonably related to the substance of the allegations in the administrative charge." Nichols v. Am. Nat. Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998). Dyer's second administrative charge, covering alleged discrimination between July 11, 2019, and November 12, 2020, purports to assert claims related to a medical leave and her termination. But many of the allegations in the Amended Complaint from this time period are unrelated to Dyer's medical leave and subsequent termination. Many of the (unnumbered) counts relate to Dyer's claim that she was physically "segregated" from her

6

colleagues. (E.g., Docket No. 19-1 ¶¶ 786-95 ("July 15, 2019—43rd day of Racial Segregation, Physical Isolation, Disability Segregation.").) Such claims do not grow out of nor are they reasonably related to her claim that RRD discriminated against her when she took medical leave.

Similarly, she outlines alleged discrimination regarding a job with "UHG" (id. ¶¶ 846-62) and a subsequent meeting at which the room was darkened, her manager stared "directly at me in a condescending manner" and she felt intimidated. (Id. ¶¶ 863-82.) But these claims simply do not have anything to do with the discrimination Dyer claimed in her second charge, which was limited to her medical leave and termination. "[A]llegations in the Complaint [that are] not included in the EEOC charge . . . are [] not properly before the Court." Brinkman v. Sprinkler Fitters Loc. #417, No. 19cv2981, 2020 WL 3642314, at *3 (D. Minn. July 6, 2020). Her first allegation regarding medical leave appears on page 59 of the Amended Complaint. (See Docket No. 19-1 ¶¶ 1070-84 ("August 15, 2019— Began Disability Leave/Constructive Disability leave (due to ongoing Racial Segregation, Disability Segregation, Harassment, Racial Discrimination, Refusal to Accommodate Disability, Intentional Infliction of Emotion [sic] Distress, Negligent Infliction of Emotional Distress, and Hostile Work Environment)).") As RRD argues, the allegations in paragraph 766 through paragraph 1069 of the Amended Complaint are unexhausted and must be dismissed with prejudice.

C.  **Failure to State a Claim**

All of Dyer's employment claims, whether for discrimination, retaliation, or a hostile work environment, require her to ultimately establish that the protected

7

characteristic—such as race, sex, age, or disability—or the protected conduct—requesting an accommodation for a disability, for instance—was either a motivating factor in the adverse employment action or was the but-for cause of the adverse employment action. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989) (Title VII discrimination claim requires employee to show that protected characteristic was a "motivating" factor in the challenged employment decision); 42 U.S.C. § 2000e-2m (codifying Price Waterhouse's "motivating factor" standard); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (discrimination claims under ADEA require proof that age was but-for cause of the employment action); Oehmke v. Medtronic, Inc., 844 F.3d 748, 756 (8th Cir. 2016) (claim of discrimination under ADA requires employee to show that discriminatory act was "motivated by" her disability); Hales v. Casey's Mktg. Co., 886 F.3d 730, 735 (8th Cir. 2018) (hostile-work-environment claim requires "a causal nexus . . . between the harassment and protected group status"). And while "a plaintiff need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas in order to defeat a motion to dismiss," mere "conclusory allegations of . . . discrimination" are insufficient and a pleading asserting only bare allegations of discrimination should be dismissed. Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1014, 1015 (8th Cir. 2013).

Dyer has failed to plead the required causal nexus for her discrimination claims. She does not allege any facts from which a factfinder could determine that her age played any role in the alleged wrongful conduct for purposes of her ADEA claim. Other than

noting her date of birth, she offers no allegation or even insinuation that her managers' allegedly discriminatory actions had anything to do with her age. At the hearing, she argued that she was required to undergo a background check for employment at RRD, and that as part of this background check RRD would have learned her date of birth. (See also Docket No. 31 at 22 (noting that Dyer's manager would have seen on Dyer's resume that she graduated from college in 1997 and could have believed that Dyer was over age 40).) This is patently insufficient to allege any causal connection between Dyer's age and the adverse employment actions. Any claims that RRD violated the ADEA within the time period of Dyer's first EEOC charge are dismissed without prejudice.

Neither has Dyer plausibly alleged any claim for discrimination on the basis of race, color, national origin, or gender. Other than repeating these claims throughout the Amended Complaint, she makes no specific allegations that any of the conduct was related to her race, color, national origin, or gender. Dyer's opposition contends that she was the only Black person in her department so the alleged "racial segregation, and physical isolation" she experienced had to be on the basis of her race. (Docket No. 31 at 23-24.) But the Court cannot assume that an adverse action taken against a Black employee is discriminatory merely because the employee is Black. Her race, color, national origin, and gender discrimination claims fail and, as with her ADEA claims, any such claims presented within the time constraints of her first EEOC charge are dismissed without prejudice.

Dyer's contention that she was discriminated against on the basis of a disability is likewise insufficiently pled. Dyer contends that she suffers from PTSD (Docket No. 19-1 at p.4), asserting that she asked for an accommodation for that disability in January 2019,

which is outside the limitations period. But she concedes that she agreed to the accommodation the company offered. (See id. p.5 ("I agreed to this accommodation.").) She makes no timely claim regarding a disability nor does she explain how her alleged PTSD constitutes a disability protected under the ADA. She does not plead that she was otherwise qualified to perform the essential functions of her job, either with or without accommodation. Oehmke, 844 F.3d at 755. Such allegations are fundamental to a claim for disability discrimination, and Dyer's failure to include any allegations from which the Court could conclude that she was disabled or an otherwise qualified individual are fatal to her ADA claims. Because the only disability discrimination she alleges occurred outside the statute of limitations, her ADA claims are dismissed with prejudice.

Many of Dyer's retaliation claims, other than her claims regarding medical leave, appear to stem from a report Dyer allegedly made in February 2019, what she refers to as the "Open Door" complaint. (Docket No. 19 at p.8.) According to Dyer, in this complaint she asserted that she was being targeted by her manager. She claims that she believed the complaint would be investigated by a party outside the Chanhassen facility, but it was not. (Id.) She also claims she did not receive notice that the "Open Door Complaint" was being handled internally until May 22, 2019, and that the company's decision to have the complaint investigated internally at Chanhassen was "an escalation for the retaliation, isolation, discrimination to get out of hand." (Id. at p.16-17.) Dyer also describes other acts that she believes were in retaliation for her complaints. (See id. at p.18 (describing meeting at which Dyer's manager "intentionally targeted" her and "tried to undermine [her] reputation as an Account Manager").)

Retaliation claims, whether under the ADEA, ADA, or Title VII, require proof of but-for causation. Nassar, 570 U.S. at 352. This is a strict standard that requires Dyer to prove that the challenged employment action would not have occurred without her employer's discriminatory intent. While the Court has serious doubts about whether Dyer's retaliation claims will ultimately succeed, at this stage she has plausibly alleged the causation necessary for those claims. The Court also doubts that Dyer can prove an adverse employment action related to this "Open Door" complaint, because a decision to investigate a complaint internally likely does not constitute an actionable adverse employment action. But once again giving her allegations a liberal construction, she has succeeded in alleging the required adverse action. Any claim of retaliation, however, must be re-pled. Dyer does not specify which alleged conduct relates to her claims of retaliation in any coherent way, and thus RRD cannot reasonably respond to any such claims.

Although mentioned only briefly in the Amended Complaint, Dyer's opposition makes clear that she also intended to bring a claim under the Family and Medical Leave Act ("FMLA"). The facts alleged in support of this violation, however, occurred on May 7, 2019, before the time specified in her first EEOC charge and thus cannot form the basis of a lawsuit. (Docket No. 19-1 at 11.) Moreover, her manager's alleged comment that "after a 10-week absence, it's just not realistic to think you'd return to the exact same account list you had before" (id.), even if true, does not violate the FMLA. Dyer believes that the FMLA required RRD to return her to "an equivalent position . . . that is virtually identical to the former position." (Id. at 11.) But this "virtually identical" language describes "pay, benefits and working conditions," not job duties. 29 C.F.R. § 825.215(a).

Rather, the FMLA requires the employer to reinstate the employee to "substantially similar duties," not virtually identical duties. Id. § 825.215(e). To the extent the Amended Complaint can be read as attempting to state a claim for a claims of FMLA interference, it is untimely and Dyer has not sufficiently stated that claim in any event. Her FMLA claim is thus dismissed with prejudice.

It also appears that Dyer intended to raise a claim for retaliation under the FMLA related to her medical leave that began in July 2019 and ended with her termination in November 2020. This claim, unlike most of Dyer's other claims, would relate directly to her second EEOC charge, which claimed discrimination arising out of her medical leave. To the extent that Dyer wishes to raise such a claim, however, it is insufficiently pled, making it impossible for Defendants to respond to it. She must re-plead any claim of FMLA retaliation.

**D.     Individual Defendants**

Dyer's Amended Complaint is brought not only against RRD but also against four individuals: Kathryn Olson, Kwabena Asamoah, Arlene Thompson, and Matthew Mason. Although the Amended Complaint does not describe these individuals' roles at RRD, it appears that Ms. Olson was Dyer's supervisor. The other three individuals work in human resources for RRD, either at the Chanhassen facility or in the corporate office. As they point out, however, employment-discrimination claims under the ADA, ADEA, and Title VII must be brought against employers, not against individuals who also work for that employer.

Dyer contends that the ADA allows for individual liability for retaliation. (Docket

No. 31 at 28.) But the case she cites involved the provision of public services. Shotz v. City of Plantation, Fla., 344 F.3d 1161 (11th Cir. 2003). The ADA contains different subchapters; the subchapter prohibiting discrimination in employment (subchapter I) is different from the subchapter prohibiting discrimination in the provision of public services (subchapter II). Id. at 1166 n.5. The individual-liability determination in Shotz related only to the provision of public services, not to employment-discrimination claims. And indeed, the Eleventh Circuit has explicitly held that there is no individual liability for employment-discrimination claims under subchapter I of the ADA. Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007). There is no authority from the Eighth Circuit Court of Appeals to the contrary.

Dyer also contends that the individual Defendants can be personally liable under HIPAA. (Docket No. 31 at 28.) Not only has the Amended Complaint not raised a HIPAA claim, but there is no private right of action under HIPAA and thus even if raised, any such claim would be subject to dismissal. Adams v. Eureka Fire Protection Dist., 352 F. App'x 137, 139 (8th Cir. 2009).

There seems to be no dispute that there can be individual liability for retaliation under the FMLA. "If an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity." Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002). The definition of "employer" is very broad: "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2911(4)(A)(ii)(I). As Defendants point out, however, Dyer has not alleged that any of the individual Defendants meet this definition.

In the section of her brief discussing individual liability, Dyer cites other statutes, including FLSA, ERISA, HIPAA, Sarbanes-Oxley, and the False Claims Act. (Docket No. 31 at 29.) None of these statutes is mentioned in the Amended Complaint, and merely because individual liability may be allowed under other federal statutes does not mean that individual liability is appropriate under the claims Dyer actually raises. Because the Court has concluded that her FMLA retaliation claim, although insufficiently pled, could plausibly state a claim, she could have a claim against the individual Defendants under this statute if she properly pleads such a claim. She has not yet done so. But she does not have any claim against the individual Defendants as to any of her other purported causes of action and those causes of action are dismissed with prejudice as to the individual Defendants.

**E.  State Claims**

Dyer claims civil theft and conversion; in addition to the alleged theft of the "cardboard castle" which forms the first claim in the Amended Complaint, the last claim lists property that she alleges was "Stolen 2020" including plants, a desk fan, notebooks, paper, and notes. (Docket No. 19-1 at p. 71.) Dyer does not specify who allegedly stole/converted any of this property, much less that the conduct was willful as required for a conversion claim. Her allegations that RRD should somehow have discovered the alleged thief are not sufficient to impose liability on RRD for these claims. And even if plausible, she has not included sufficient detail about her claims for civil theft or conversion to allow RRD to respond and she must more specifically plead them.

Her emotional-distress claims fare no better. A claim for negligent infliction of

14

emotional distress requires that a plaintiff be "within a zone of danger of physical impact." K.A.C. v. Benson, 527 N.W.2d 553, 557 (Minn. 1995). The "zone of danger" "encompass[es] plaintiffs who have been in some actual personal physical danger caused by defendant's negligence." Id. at 558. Dyer has not alleged any actual personal physical danger whatsoever and it is not plausible that she can do so. A plaintiff claiming negligent infliction of emotional distress also must establish "severe emotional distress with attendant physical manifestations." Id. at 557. There is no allegation in the Amended Complaint regarding any physical manifestations of the distress Defendants allegedly caused. Because of the "zone of impact" requirement, Dyer cannot plausibly plead a negligent-infliction claim and this claim is dismissed with prejudice.

A claim for intentional infliction of emotional distress requires "extreme and outrageous" conduct in addition to severe distress. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). Dyer's allegations simply do not rise to the level of "extreme and outrageous" conduct, which is conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (quotation omitted). Severe emotional distress, for purposes of a claim for intentional infliction, is distress "so severe that no reasonable man could be expected to endure it." Id. (quotation omitted). Dyer's allegations do not suffice to plead any claim for emotional distress, which she appears to realize because she says that she will make the claim "crystal clear if the Motion for a More Definite Statement is granted." (Docket No. 31 at 35.) It is difficult to imagine an employment claim that would also give rise to a claim for intentional infliction of emotional distress, and Dyer should seriously consider whether she can plead

such a claim before attempting to raise it again. However, because she may be able to plausibly plead such a claim, this claim will be dismissed without prejudice.

**F.    Conspiracy**

18 U.S.C. § 241 is a criminal statute for which there is no private right of action. Dyer now contends that she is alleging a civil conspiracy, but she cannot amend her pleading in a memorandum opposing a dispositive motion. And conspiracies that are "entirely duplicative of the underlying tort" are subject to dismissal. St. Jude Med., S.C., Inc. v. Biosense Webster, Inc., 994 F. Supp. 2d 1033, 1052 (D. Minn. 2014) (Montgomery, J.). Her conspiracy claim is dismissed with prejudice.

**G.    Other claims**

Defendants note that Dyer appears to be attempting to raise claims that have no valid cause of action. She refers to disparate treatment and disparate impact under the Office of Federal Contract Compliance Programs ("OFCCP"). But there is no private right of action for enforcement of OFCCP regulations. Dyer asserts that RRD is subject to OFCCP because it prints census forms, and that she can bring a lawsuit under Title VII, the ADA, and the ADEA for conduct defined as disparate treatment and disparate impact under OFCCP regulations. But she cannot enforce OFCCP's requirements in a civil lawsuit, and she should refrain from attempting to raise any such claim in an amended pleading.

Indeed, Dyer frequently relies on RRD policies or EEOC statements regarding preferred methods of resolving workplace conflicts as support for her claims. Such informal documents do not have the force of law, and any claim that RRD should be held liable for ostensibly violating either its own policies or EEOC guidance will almost

16

certainly be subject to dismissal.

## H. More Definite Statement

To the extent that Dyer's claims are timely, exhausted, and plausibly pled, she must replead those claims. Dyer's Amended Complaint is a classic "shotgun pleading." She states a dozen or more purported causes of action with respect to each factual narrative, but the narratives themselves offer little indication as to exactly what Dyer is claiming is discriminatory. For example, she asserts "Improper Denial of Workers Compensation" in August and September 2019. (Docket No. 19-1 ¶¶ 1085-97.) But that statement constitutes the only "facts" to support the claim. There is no indication that RRD had anything to do with denying what was apparently Dyer's request for worker's compensation, putting aside that Dyer has not raised any claim regarding denial of worker's compensation. Similarly, the next claim contends that individuals at RRD called her on July 17, 2020, to tell her that she would be terminated pursuant to RRD's leave-of-absence policy. (Id. ¶¶ 1098-1107.) Because the pleading contains no factual background, the Court must comb through other counts in an attempt to discern who these individuals are, and the claim itself does not explain why this phone call was allegedly discriminatory or in retaliation for anything.

It is clear that Dyer believes that she was discriminated against. But RRD cannot meaningfully respond to the allegations in the Amended Complaint. She must replead her retaliation claims and any other claim dismissed without prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 21) is **GRANTED in part** and the Motion for More Definite Statement (Docket No. 21)

17

is **GRANTED**. Within 30 days of the date of this Order, Dyer may file a Second Amended Complaint that complies with the Order's directives. Should she fail to file an amended pleading in the time allowed, this matter will be dismissed with prejudice.

Dated:   June 1, 2021

                                         *s/Paul A. Magnuson*
                                         Paul A. Magnuson
                                         United States District Court Judge