UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Letitia Nadine Dyer,                                              Civ. No. 20-2342 (PAM/JFD)

      Plaintiff,

v.                                                                **MEMORANDUM AND ORDER**

R.R. Donnelley & Sons Company,

      Defendant.

---

This matter is before the Court on Defendants' second Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Letitia Dyer was employed at Defendant R.R. Donnelley & Sons in Chanhassen, Minnesota ("RRD"). After the Court granted in part RRD's first motion to dismiss Dyer's 81-page Amended Complaint (Docket No. 19) and instructed Dyer to replead some of her claims (Docket No. 36),[1] she filed a 90-page Second Amended Complaint (Docket No. 51) that raises claims against RRD under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08 et seq., alleging discrimination on the basis of race, color, gender, national origin, disability, and age; the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and for intentional infliction of emotional distress.

---

[1] Many of the facts and much of the procedural history of this matter are set forth in the previous Order and will not be repeated here.

The Second Amended Complaint sheds light on claims that were difficult to decipher in Dyer's first attempts at pleading her case. According to Dyer, her difficulties at RRD began in August 2018, when RRD hired a woman named Katie Olson as Dyer's supervisor. (2d. Am. Compl. (Docket No. 50) ¶ 32.) Before Olson's hiring, Dyer contends that she had been promoted several times and had always received good performance reviews. She was serving as a Print Production Account Specialist Level II ("PPAS II") at the time of her termination.

After Olson's hiring, Dyer asserts that Olson and others began a campaign to have an "all white" customer service department and to force Dyer out of her job. (Id. ¶ 37.) This campaign involved what Dyer characterizes as "racially targeted discrimination/harassment" (id. ¶ 38), often in the form of microaggressions.[2] (Id. ¶¶ 39-40.) But nearly all of the incidents about which Dyer complains in the extensive factual allegations (id. ¶¶ 26-176) took place long before the relevant statute of limitations, which the Court made clear in its previous Order is May 2019 for Dyer's Title VII claims. Dyer may believe that the incidents about which she complains constituted a pattern of harassment, and thus that the incidents are either relevant background or provide timely support for her hostile-work-environment claim. The Court will discuss that claim further below. But to the extent that most of these allegations are Dyer's attempt to state a claim for discrimination or retaliation under Title VII, this claim was dismissed with prejudice as

---

[2] For example, Dyer contends that Olson told Dyer, "You write really good emails." (Id. ¶ 42.) Dyer interpreted this statement as that Olson "was surprised that [Dyer], as a Black American female, would have excellent writing skills." (Id.)

to any alleged discrimination before May 19, 2019, and thus cannot form the basis of Dyer's Title VII claims here.

In each Count of her Second Amended Complaint, Dyer includes additional, new facts that are not included in the "Factual Allegations" section of the pleading. Indeed, the additional facts supporting her newly pled Title VII claim span more than 100 paragraphs (id. ¶¶ 200-309). For example, although the initial factual allegations describe Dyer's application for a promotion to Print Production Account Specialist Level III ("PPAS III") in January 2019 (id. ¶ 93), only in the Title VII Count does Dyer state that she did not receive the promotion but instead it went to a younger, white female external candidate. (Id. ¶ 201.) And some of the allegations supporting her Title VII claim are presented with no relevant background. She claims, for example, that she applied for an "EHAS/Quality" position at RRD that ultimately went to another younger, white female external candidate. (Id. ¶¶ 203-04.) There is no indication when this happened.

Her MHRA claim also includes facts that were not included in her initial factual allegations or in support of her Title VII claim. (Id. ¶¶ 315-76.) These facts include issues with a job for a customer identified as "UHG" on July 24, 2019. According to Dyer, Katie Olson interfered with the timing of this job, and when Dyer complained about this interference, she was called into a meeting in which she felt "very uncomfortable and intimidated" because the three supervisors in the meeting were sitting with "their faces partially in shadow, while [Dyer] fully illuminated, like in an interrogation." (Id. ¶ 322.) Dyer contends that the plant president "was dismissive, and let how [sic] audible signs of frustration each time [Dyer] spoke," and that Katie Olson "spent most of the meeting,

3

posturing, arms crossed, just staring directly at [Dyer] in a condescending manner." (Id. ¶¶ 325-26.) Dyer asserts that at this meeting she raised the issue of her cubicle assignment that was the focus of much of her first Amended Complaint; the plant president assured her that her cubicle would be moved but it was never moved. (Id. ¶¶ 332, 335.) Dyer does not allege that any specific adverse employment action arose out of this allegedly nefarious meeting.

Also included in the MHRA claim are allegations regarding Dyer's leave of absence, which began on August 15, 2019. She asserts that in July 2020 the HR team intentionally delayed in sending her information on extending the leave of absence and instead demanded that she return to work by October 2020. (Id. ¶ 352.) Dyer complains that "[t]here was no interactive process with the providers of the Plaintiff." (Id.) Dyer also contends that the HR manager could not define "harassment" and that he told Dyer that only if five to seven other individuals complained of harassment would RRD consider it harassment. (Id. ¶ 357.) Dyer also seems to allege that she was requesting an accommodation for a disability in the fall of 2020 but RRD refused to engage in an interactive process on that request and sought information that it did not have a right to know. (See id. ¶¶ 369-72.) The previous Order dismissed any claim for disability discrimination with prejudice, thus this invocation of ostensible disability-accommodation requirements such as "interactive process" is irrelevant to any of Dyer's claims.

Finally, in support of her intentional-infliction claim, Dyer claims to have "suffered intense mental anguish as a result of the consistent and ever increasing acts of harassment [and] discrimination." (Id. ¶ 382.a.) She alleges that she "continues to have anxiety

attacks, bouts with depression, panic attacks, and is unable to be away from her home for long periods of time." (Id. ¶ 382.d.) And she claims that she has "[i]ssues of trembling hands, nausea, vomiting, elevated blood pressure, increased severity of migraine headaches related to the hostile workplace environment" in addition to "increasing events of insomnia, nightmares, hypervigilance, depression and anxiety." (Id. ¶ 382.f.) She asserts that she can provide "[a] note by a doctor or psychologist . . . to support the claim of emotional distress." (Id. ¶ 382.h.)

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).

**A.    Timeliness**

On June 1, 2021, this Court ordered Dyer to replead her claims within 30 days. (Docket No. 36.) Rather than do so, Dyer attempted to appeal the Order. (Docket No. 37.) On August 6, 2021, the Eighth Circuit Court of Appeals dismissed Dyer's appeal for lack of jurisdiction. (Docket No. 44.) Three days later, this Court ordered Dyer to file a second amended complaint by August 16, 2021. (Docket No. 45.) On August 16, Dyer wrote to

the Clerk of the District Court seeking an extension of time in which to file her amended pleading. (Docket No. 46.) The Clerk's Office immediately responded that any such extension must be requested in a motion directed to the Court.[3] (Docket No. 47.) Despite this direction, Dyer once again wrote to the Clerk's Office on August 20, seeking an additional extension. (Docket No. 49.) On August 24, eight days after the Court's deadline for doing so, Dyer filed the Second Amended Complaint. (Docket No. 51.) Dyer has yet to explain her failure to file the Second Amended Complaint in a timely manner. Indeed, she does not address the timeliness issue at all in her opposition memorandum.

This District's rules require parties seeking to extend time to file motions with the Court in that regard. D. Minn. L. R. 16.3. The rule further requires that parties establish good cause for the extension they seek. Id. Dyer did not file any such motion nor has she argued that good cause supports her unilateral extension of the Court-imposed deadline. Although the Court does not countenance litigants ignoring deadlines and could dismiss on this basis alone, given Dyer's pro se status the Court instead will consider her pleading on the merits.

**B.    Equal Pay Act**

The first Count of the Second Amended Complaint contends that RRD violated the Equal Pay Act, 29 U.S.C. § 206(d). To state a claim for a violation of the EPA, a plaintiff must plead that she was paid a different wage than an employee of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility,

---

[3] On June 30, 2021, Dyer was allowed to file documents electronically in this matter. Thus, she received electronic notice of all of the filings discussed in this paragraph.

6

and which are performed under similar working conditions." Tenkku v. Normandy Bank, 348 F.3d 737, 740 (8th Cir. 2003) (quoting 29 U.S.C. § 206(d)(1)).

The Second Amended Complaint asserts that Dyer "was outperforming all of her PPAS II counterparts (all white and male); and was outperforming all but two of her PPAS III coworkers (all white, both male and female)." (2d Am. Compl. ¶ 181.) Despite this, Dyer alleges that Ms. Olson told Dyer on two occasions that Dyer "was the lowest paid person in the Customer Service Department." (Id.) Olson promised Dyer that RRD would correct that discrepancy, but according to Dyer, RRD did not do so. (Id.) Dyer contends that RRD willfully violated the EPA by paying Dyer "less than her white male or white female counterparts because of the Plaintiff's race, ethnicity, and gender (Black 'multi-generational' American female)." (Id. ¶ 182.)

Dyer further alleges that, although RRD refused to provide her with the pay range for a PPAS II, RRD "recently posted an opening for an entry level [PPAS I position] at the Chanhassen, MN location, thereby providing [Dyer] with the pay range for the PPAS I position, and an approximate range for the PPAS II position." (Id. ¶ 185.) According to Dyer, this job posting "verif[ied] that . . . Dyer was being paid less than the upper limit of the entry level . . . position." (Id.) Finally, Dyer claims that she was subject to "harsher and unequal working conditions than any of the white employees" because of the alleged racial discrimination and harassment she faced. (Id. ¶¶ 187.) She does not, however, point to any specific male who had the same qualifications, performed the same job she did, and was paid more. Her opposition brief asserts that RRD "should know" who the comparators are, but it is Dyer's burden to plead and ultimately establish specific comparators, not

7

RRD's.

The Court has now allowed Dyer three attempts to plead her claims. As discussed further below, she has failed to do so with respect to her discrimination claims. Her EPA claim fares no better, both because she has not pled any particular male comparator who was who was paid more than she was and because her extraneous allegations make it impossible for RRD to properly respond to this claim. It is not relevant, for example, whether the coworkers who earned more than she did are white, nor can she compare herself to other female PPAS II or PPAS III employees, no matter their race. The EPA applies only to discrimination on the basis of sex, and RRD violated the EPA only if it paid Dyer less than similarly situated male employees of any race. Nor is her diatribe about allegedly harsh working conditions well taken. The EPA is not concerned with working conditions, only with performance, job requirements, and pay. This claim is therefore dismissed without prejudice.

C.   **Minnesota Human Rights Act**

The EPA claim is not the only claim Dyer raises that she did not include in her previous pleadings. Dyer also purports to raise a claim for workplace discrimination under the MHRA. This claim, at least in part, appears to be based on her allegations regarding the "UHG" job, described more fully above. This conduct took place in late July 2019, and thus is beyond the scope of her first administrative charge, as discussed below. And Dyer's second charge related only to her leave of absence; she did not mention any other alleged discrimination.

But even if encompassed by her either of her administrative charges, her MHRA claim is untimely. The MHRA provides that "a person may bring a civil action: (1) within 45 days after receipt of notice that the commissioner has dismissed a charge . . . ." Minn. Stat.§ 363A.33, subd. 1. The commissioner dismissed Dyer's first charge on August 11, 2020. (McNeeley Decl. (Docket No. 58) Ex. 4.) The commissioner dismissed Dyer's second charge on January 29, 2021. (Id. Ex. 6.) Because of the Covid-19 pandemic, the Minnesota legislature extended all limitations periods from March 13, 2020, until April 15, 2021. 2020 Minn. Laws ch. 74, art. 1, sec. 16.[4] Assuming that Dyer had 45 days from that date to file a lawsuit raising an MHRA claim related to either of her charges, that period expired on May 31, 2021. Dyer did not file any pleading raising an MHRA claim until she filed the Second Amended Complaint on August 24, 2021. Her MHRA claims are untimely and must be dismissed with prejudice.

**D.    Title VII**

Federal anti-discrimination laws require a person claiming employment discrimination to file a charge regarding the alleged discrimination before bringing a lawsuit. Only discrimination occurring within 300 days of the charge is actionable. See 42 U.S.C. § 2000e-5(e)(1). In addition to the statutory limitations period, Title VII prohibits a person from filing a lawsuit unless the claims in that lawsuit involve alleged discriminatory or retaliatory practices that "grow[] out of or [are] like or reasonably related

---

[4] This law extends statutes of limitations during the Covid emergency, expiring "60 days after the end of the peacetime emergency declaration . . . or February 15, 2021, whichever is earlier."

to the substance of the allegations in the administrative charge." Nichols v. Am. Nat. Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998).  As noted in the prior Order, "allegations in the Complaint [that are] not included in the EEOC charge . . . are [] not properly before the Court." Brinkman v. Sprinkler Fitters Loc. #417, No. 19cv2981, 2020 WL 3642314, at *3 (D. Minn. July 6, 2020).

The Court previously held that Dyer could not raise any claims under Title VII for actions occurring before May 15, 2019, 300 days before she filed her first EEOC charge. Nearly all of the allegations in the "factual allegations" second of the Second Amended Complaint occurred before May 15, 2019.  There are only three possible timely allegations arising out of the first administrative charge that the Court can discern from the new pleading:  a May 13, 2019, performance review that Dyer alleges was discriminatory and about which she allegedly complained to RRD's Human Resources department (2d Am. Compl. ¶¶ 158-159); on May 16, 2019, the last Customer Service employee aside from Dyer was moved from Dyer's cubicle area, leaving Dyer as the only remaining employee in that area (id. ¶ 164); and an allegedly discriminatory job assignment during the week of May 16, 2019 (id. ¶ 171).

To the extent Dyer asserts claims from time periods other than those listed in her two administrative charges, May 15, 2019 to July 10, 2019, for the first charge and July 11, 2019 through November 12, 2020, those claims are unexhausted.  See VanDyke v. Minneapolis Police Dep't, No. 14cv224, 2015 WL 138060, at *4 (D. Minn. Jan. 7, 2015) (R. & R. of Rau, M.J.) (finding plaintiff limited to dates listed in EEOC charge because plaintiff did not check "continuing action" box).  Moreover, to the extent that Dyer is

raising any claim for gender discrimination under Title VII or the MHRA for the period before July 11, 2019, any such claim is unexhausted as well. Dyer's first EEOC charge did not claim discrimination on the basis of sex or gender, but rather was limited to alleged discrimination, harassment, and retaliation based on race, age, and disability.[5] And although the Court allowed Dyer to re-plead her claim regarding age discrimination, she has again utterly failed to allege any connection between her age and the allegedly discriminatory actions. Her discrimination claims fail and must now be dismissed with prejudice.

Dyer also appears to claim that she was subjected to a hostile work environment in violation of Title VII. To establish such a claim, acts occurring outside the limitations period may be actionable if one act of the alleged pattern of harassment occurs during the relevant time period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). But only her first charge claimed such harassment and thus this claim may be based only on acts before July 2019. Her second charge alleged discrimination and retaliation because of her extended medical leave and did not include any allegations of harassment, and Dyer did not check the "continuing violations" box on either of her charges. And as discussed above, any harassment claim is limited to harassment based on race or national origin, as Dyer did not claim sex discrimination in this first charge and has failed to allege any plausible connection to her age. Even had she claimed gender discrimination, however, Dyer has failed to allege any facts from which the Court could conclude that any of RRD's

---

[5] The Court dismissed Dyer's claims of disability discrimination with prejudice and she did not attempt to reassert any such claims in the Second Amended Complaint.

actions were based on Dyer's gender, and those claims would be subject to dismissal.

"To set forth a prima facie case of a hostile work environment, [a plaintiff] must demonstrate (1) that [she] is a member of a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on [her protected status]; and (4) that the harassment affected a term, condition or privilege of her employment." Anderson v. Family Dollar Stores of Ark., Inc., 579 F.3d 858, 862 (8th Cir. 2009) (second alteration in original) (quotation omitted). Hostile-work-environment harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). "The standard for demonstrating a hostile work environment under Title VII is 'demanding,' and 'does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace.'" Liles v. C.S. McCrossan, Inc., 851 F.3d 810, 823 (8th Cir. 2017) (alteration in original) (quoting Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 806 (8th Cir. 2013)).

The Court understands that Dyer viewed the alleged actions as harassing. But she has not pled, and cannot plausibly plead, that they were objectively serious enough to amount to actionable harassment. "To be actionable, the work environment must be both objectively hostile to a reasonable person and subjectively hostile to the victim." Warmington v. Bd. of Regents of Univ. of Minn., 455 F. Supp. 3d 871, 883 (D. Minn. 2020) (Tostrud, J.). The actions of which she complains, even if true, are not "severe or

12

pervasive" enough to have created an objectively "abusive working environment," as Title VII requires. See Chen v. Yellen, No. 3:14cv50164, 2021 WL 4226202, at *12 n.4 (N.D. Ill. Sept. 16, 2021) ("Regardless of whether an aggression is micro or macro, the Court considers the evidence of hostility in totality . . . . Whether the sum comes from a large number of small incidents, or a small number of larger incidents, the result is the same. Here, her cited incidents do not add up to a hostile work environment, no matter what label they are assigned.").

Moreover, other than the allegation that she was the only Black employee in her department, there is no other allegation from which the Court can conclude that the alleged harassment or discrimination were based on Dyer's race, color, or national origin. See Warmington, 455 F. Supp. 3d at 882 (noting that a discrimination plaintiff facing a Rule 12(b)(6) motion must set forth "factual allegations plausibly showing that the defendant manifested bias relevant to the adverse employment action"). Dyer obviously perceived her interactions with her supervisors as racially motivated, but she offers no allegation that any employee ever made a racially charged comment to her, much less said anything overtly discriminatory in any way. Title VII is not intended to address every difficult workplace situation; it applies only to severe and pervasive discrimination on the basis of protected characteristics. Dyer has not alleged the requisite causation and her Title VII claims, whether for discrimination, retaliation, or harassment, fail.

E.     **Intentional Infliction of Emotional Distress**

In its previous Order, the Court discouraged Dyer from attempting to raise a claim for intentional infliction of emotional distress, noting that such a claim requires "extreme

13

and outrageous" conduct in addition to severe distress.  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983).  Even if plausible, Dyer's allegations simply do not rise to the level of "extreme and outrageous" conduct, which is conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  Id. at 439 (quotation omitted).  Indeed, as the Court noted previously, it is difficult to imagine a claim for intentional infliction arising out of an employment situation.  Moreover, severe emotional distress, for purposes of a claim for intentional infliction, is distress "so severe that no reasonable man could be expected to endure it."  Id. (quotation omitted).  Dyer's new allegations of anxiety and depression, even combined with her alleged physical manifestations of those conditions, simply do not suffice to plead any claim for intentional infliction of emotional distress.  This claim is dismissed with prejudice.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 55) is **GRANTED**.  Dyer's claims under the EPA are dismissed without prejudice and her remaining claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Wednesday, December 1, 2021

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge